UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADAM ANTHONY HOWE, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No.1:15-cv-00771-WTL-DKL |
| ) | |
| STACIA HOOVER, NURSE, ) | |
| ) | |
| Defendant. ) | |

**Entry Discussing Defendant's Motion for Summary Judgment and Plaintiff's Opposition and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 24] is **granted.**

## I. Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is Adam Howe ("Mr. Howe"), an inmate who at all relevant times was confined at the Pendleton Correctional Facility ("Pendleton"). The defendant is Nurse Stacia Hoover Frazee ("Nurse Hoover"). In his second amended complaint, Mr. Howe alleges that Nurse Hoover was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. He seeks a declaratory judgment and all other proper relief.

The defendant seeks resolution of the plaintiff's claims through summary judgment. The plaintiff has responded to the defendant's motion for summary judgment and the defendant has replied. The motion is ripe for resolution.

## II. Summary Judgment Standard

Summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011).

A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. Howe, the non-movant, the following facts are undisputed for purposes of the motion for summary judgment:

While he was confined at Pendleton on August 30, 2014, Mr. Howe injured his left wrist playing handball outdoors. Nurse Hoover saw Mr. Howe in the Pendleton clinic. Based on her

examination, Nurse Hoover suspected Mr. Howe may have fractured his left wrist and that he would require outside medical attention in the emergency room. After Nurse Hoover obtained approval from the on-call medical provider, Dr. Michael Person, Mr. Howe was immediately transported to St. Vincent Anderson Regional Hospital ("St. Vincent") for further evaluation of his wrist injury.

Mr. Howe's wrist was evaluated by emergency room physicians at St. Vincent. His x-ray results showed a non-displaced closed radial styloid fracture of his left wrist. A non-displaced fracture is a fracture in which the bone remains aligned. The St. Vincent emergency room medical providers stabilized the fracture with a glass thumb spica cast and ace wrap and prescribed pain medication. They did not recommend surgery. It was recommended that Mr. Howe keep it elevated, ice for swelling and pain, wear the splint, and have a follow up visit with an orthopedic provider the following week. Mr. Howe was returned to Pendleton at approximately 6:30 p.m. on August 30, 2014.

On September 3, 2014, Mr. Howe was seen by Dr. Person for follow up. Dr. Person continued the prescription for Norco (a narcotic pain reliever) for an additional five days and ordered that his meals be delivered to his cell for 30 days. Dr. Person also noted in his Provider Note that Mr. Howe was to be scheduled for an orthopedic clinic follow-up.

On September 3, 2014, Mr. Howe submitted a Health Care Request Form (HCRF) requesting that he be taken off the meal delivery schedule so that he could have his meals in the facility cafeteria. On September 7, 2014, he submitted another HCRF stating that he was experiencing pain in his arm and wanted to see the facility doctor. In responding to Mr. Howe's HCRF, Nurse Hoover noted that, based on his complaints of pain, she believed the circulation in

his left arm should be evaluated for possible compartment syndrome (excessive swelling in area surrounding injury). She copied Dr. Person on Mr. Howe's request to be seen by a physician.

On September 9, 2014, at 9:43 a.m., Nurse Hoover saw Mr. Howe in response to his request for health care and his complaints of increasing pain in his left wrist. He complained of having to be seen in the urgent care clinic. Nurse Hoover explained that as he had submitted a complaint of increased pain, she needed to ensure that he was not experiencing a serious condition at the site of his injury. Nurse Hoover assessed his left arm for swelling and capillary refill and noted that he did not appear to have circulation issues. She then requested that Dr. Person's chronic care nurse, J. Grimes, LPN, inform Dr. Person of the urgent care clinic visit and note if Dr. Person had any further treatment orders for Mr. Howe. Nurse Hoover also noted that she would follow up with Carrie Welder, the administrative assistant responsible for scheduling outside consultations, regarding the status of Mr. Howe's orthopedic appointment. She further requested that Dr. Person evaluate non-formulary pain medication requests to be submitted for approval by the Regional Medical Director (RMD) to address Mr. Howe's complaints of pain.

As an RN, Nurse Hoover was not involved in scheduling appointments with outside providers. On September 9, 2014, after Nurse Hoover inquired about the ortho referral, at 10:02 a.m., Ms. Welder faxed a request for a consultation appointment to Orthoindy.

On September 12, 2014, in response to Nurse Hoover's September 9, 2014, notification to Dr. Person's chronic care nurse, Dr. Person saw Mr. Howe to evaluate his complaints of throbbing pain in his wrist. Dr. Person noted that Mr. Howe was waiting for the scheduled orthopedic clinic visit and he prescribed Ultram for pain relief.

On September 17, 2014, Mr. Howe submitted another HCRF inquiring about the status of receiving a hard cast for his wrist injury. Dr. Person responded by stating that facility staff was

scheduling the orthopedic appointment. On September 18, 2014, Ms. Welder called the OrthoIndy clinic to check on the status of the appointment. Staff at OrthoIndy said they would call back to confirm the date of the appointment. On September 19, 2014, Ms. Welder confirmed that the orthopedic appointment had been set for September 30, 2014, at 9 a.m.

On September 19, 2014, Mr. Howe filed a grievance stating that he had been told by Dr. Person on September 2, 2014, that he "needed to see an orthopedics M.D. to have pins put in my fractures." He also stated in his grievance that the paperwork submitted for the orthopedic appointment was lost "according to medical" and that he had "bones sticking up!" Dkt. 25-2, p. 164. Kelly Counceller, who was the Health Services Administrator for Pendleton responded to Mr. Howe on September 25, 2014, that his appointment with the orthopedic clinic had been scheduled, but, as is standard procedure, for security reasons, inmates cannot be told the exact date and time of an outside appointment.

On September 22, 2014, Mr. Howe submitted another HCRF concerning the scheduling of his outside orthopedic clinic visit. He stated that he "would like to know if they will have to re-break the bones to put the pins in it." Dkt. 25-2, p. 156. There is no indication in the medical records either from St. Vincent or Pendleton that Mr. Howe was ever prescribed surgery or pins in his wrist as treatment for his non-displaced wrist fracture. In response to his HCRF, Mr. Howe was again informed that his appointment at the orthopedic clinic had been scheduled.

On September 25, 2014, Mr. Howe submitted a HCRF stating that he had run out of pain medications and requested that his prescription be refilled. Dr. Person responded that his pain medications would be renewed.

On September 29, 2014, Mr. Howe submitted another HCRF requesting to see a doctor about pain he was experiencing at the site of his injury. He was informed that he was scheduled for an appointment with the ortho clinic and he was seen at the OrthoIndy clinic the next day.

On September 30, 2014, Mr. Howe was seen in the OrthoIndy orthopedic clinic by Dr. Kaehr. A hard cast was applied to his left wrist. The provider consultation report noted "anatomic alignment by x-ray" of the bones in Mr. Howe's left wrist— meaning his fracture continued to be properly aligned. Dkt. 25-2, p. 126. The treatment provided at the OrthoIndy clinic was continued immobilization of the injured wrist with the hard cast and a recommendation for cast removal in five weeks. There was no other treatment prescribed during his clinic visit at OrthoIndy.

The appointment to remove the cast had to be rescheduled once because the prison was on lock-down. Mr. Howe's cast was removed on December 10, 2014. That same day, Nurse Hoover examined Mr. Howe when he returned from his off-site clinic visit. The OrthoIndy clinic report stated no more follow up was required for Mr. Howe's wrist injury and that he had no activity restrictions. Dr. Person later prescribed physical therapy but no further treatment involved Nurse Hoover.

### B. Analysis

At all times relevant to Mr. Howe's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Mr. Howe alleges in his second amended complaint that Nurse Hoover was deliberately indifferent to his serious medical needs after his wrist was fractured on August 30, 2014. He alleges that Nurse Hoover failed to ensure that all paperwork associated with his care was handled properly. He alleges that each time he saw Nurse Hoover at the infirmary, she told him that the paperwork to schedule him to see an orthopedic specialist had been lost or misplaced. He further alleges that she denied his requests to see Dr. Person.

To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 8374 (1994); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014).

For purposes of summary judgment, the parties do not dispute the first element, that Mr. Howe had a serious medical need.

The undisputed record fails to support Mr. Howe's claims against Nurse Hoover. Nurse Hoover was the first provider to evaluate Mr. Howe's injury. She determined that he needed emergency treatment, and she sought and obtained that approval. With respect to the orthopedic referral, Nurse Hoover investigated and prompted the referral being made on September 9, 2014. Nurse Hoover was not responsible for making those appointments, but she acted in a way to make sure that the referral was, in fact, made. There is no evidence that she denied Mr. Howe's

requests to be seen by Dr. Person. In fact, it was Nurse Hoover who made sure that Dr. Person saw Mr. Howe on September 12, 2014, to evaluate Mr. Howe's complaints of pain. She also suggested that Dr. Person obtain approval for additional non-formulary pain medications.

Mr. Howe believes that his orthopedic treatment was not delivered in a timely manner. The injury occurred on August 30, 2014. Mr. Howe received emergency care. The referral to an orthopedic specialist for follow-up was initiated on September 9, 2014, and Mr. Howe was seen on September 30, 2014. Contrary to Mr. Howe's allegations, there is no medical record indicating that his bones were sticking out or that his fracture required anything more than casting.

"In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm. That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013) (internal quotation omitted). Mr. Howe has shown no harm caused by the alleged delay in being sent to an outside provider. He was treated with pain medication the entire month of September and his wrist had been stabilized by the emergency room medical providers. His fracture was non-displaced, meaning the bones in his wrist were aligned. He needed no pins or surgery. When he was seen on September 30, 2014, the orthopedic physician prescribed no treatment other than continued immobilization with a hard cast. It was recommended that he be seen for cast removal in five weeks.

Mr. Howe's second amended complaint and his response to the motion for summary judgment register his dissatisfaction with his medical treatment after he fractured his wrist, but

he has not presented sufficient evidence to create a genuine issue of fact that Nurse Hoover disregarded his pain or any other medical needs. Mere disagreement with a provider's medical judgment is not enough to prove deliberate indifference. *Berry v. Peterman,* 604 F.3d 435, 441 (7th Cir. 2010). Even if Mr. Howe had shown negligence on the part of Nurse Hoover, which he has not, that would not be sufficient to demonstrate a violation of the Eighth Amendment. *Petties,* 836 F.3d at 728 ("showing mere negligence is not enough"); *Pyles,* 771 F.3d at 409 ("Something more than negligence or even malpractice is required.").

"A prisoner may establish deliberate indifference by demonstrating that the treatment he received was blatantly inappropriate." *Pyles,* 771 F.3d at 409 (internal quotation omitted). "Making that showing is not easy: A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Id.* (internal quotation omitted). Mr. Howe has not shown that any treatment provided or referred by Nurse Hoover was so contrary to accepted professional standards that a jury could infer that it was not based on medical judgment. *See Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008). Rather, Nurse Hoover responded reasonably and in a timely manner to Mr. Howe's complaints and made sure that other providers were attentive to him as well.

A court examines the totality of an inmate's medical care when determining whether a defendant has been deliberately indifferent to an inmate's serious medical needs. *Walker v. Peters,* 233 F.3d 494, 501 (7th Cir. 2000). It is well-settled that while incarcerated, an inmate is not entitled to the best possible care or to receive particular treatment of his choice. *See Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). Mr. Howe was "entitled to reasonable measures to meet a substantial risk of serious harm," *id.,* which is what he received.

Mr. Howe has not met the standard of deliberate indifference in this case. Accordingly,

defendant Nurse Hoover is entitled to summary judgment on Mr. Howe's claims of deliberate indifference.

## IV.  Conclusion

Defendant Nurse Hoover is entitled to summary judgment on Mr. Howe's claims of deliberate indifference to a serious medical need. Accordingly, the defendant's motion for summary judgment [dkt. 24] is **granted.** Judgment consistent with this Entry and the Entry of October 30, 2015, shall now issue.

**IT IS SO ORDERED.**

Date:  12/13/16

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Adam Anthony Howe
#862718
Westville Correctional Facility
Electronic Service Participant – Court Only

Electronically registered counsel